Hillsborough, }
May 7, 1902. }

FLATHER *&amp; a. v.* ECONOMY SLUGGING MACHINE CO. *&amp; a.*

Under a contract providing for the construction of a sample machine and thirty others, each to be paid for when "finished and delivered as per agreement," a right of action for the price of each accrues upon its completion and delivery.

Evidence that the cost of a machine was increased by changes in the plan of construction, made subsequent to the execution of a contract establishing the builders' compensation and at the request of the purchaser, warrants a finding of a promise on the part of the latter to pay the added expense.

The individual liability of stockholders who have not fully paid for their shares is not defeated by the fact that one of them is a stockholder in a creditor corporation which seeks to enforce such liability.

BILL IN EQUITY, to enforce the individual liability of the stockholders of the Machine Company for its indebtedness to the plaintiffs. Facts found, and case transferred from the May term, 1901, of the superior court, by *Peaslee,* J.

The plaintiffs are Mark Flather and two others, who did business as partners under the name of Mark Flather, and the Mark Flather Planer Company, a corporation which succeeded to the business of the partnership. In 1892 the defendant Cutter was the owner of a patent for a shoe slugging machine, and he with others, including Mark Flather, formed a corporation for the manufacture of the machines. Flather agreed to take twenty shares of the stock and pay ten per cent of the par value therefor, which was to be deducted from payments for machines which he was to furnish. This has not been done, nor has the capital stock of the company been paid in. February 27, 1893, Flather entered into a written contract to make thirty slugging machines for the Machine Company and a large quantity of tools to be used in constructing the machines, the tools to be so made as to "duplicate and interchange." Under this contract five machines and some tools were made. During the progress of the work differences arose between the parties, and on December 14, 1893, a new contract was made between the Machine Company and the Planer Company, of which Mark was the manager. All the differences between the parties as to past transactions were then settled, and this settlement was a part of the consideration for the new contract. The abandonment of the old contract and the making of the new one were parts of one transaction.

By the contract of December 14, the Planer Company agreed "to build one compleat machine, known as the Economy Slugging

Machine, under the direction of Solomon M. Cutter. The workmanship and meterial to compare favorably with compeating machines, said machine to be used as a sample and standard machine. And the said Mark Flather Planer Co. further agrees to build thirty other machines coresponding in every way and duplicateing so as to interchange each and every part with said sample machine, and the said Mark Flather Planer Co. further agrees to compleat and deliver said sample machine and three others within sixty days from date, and two machines each month thereafter until thirty compleat machines and sample shall have been delivered, and to furnish with sample machine a numbered price list of all parts of said machine, which total shall not exceed one hundred and thirty-five dollars, and to build such extra parts as may be ordered in lots of ten or more, except in case of large castings, which may be ordered in lots of one or more. The Economy 'Slugging Machine Co. on their part agree to pay ($135) one hundred and thirty-five dollars for sample machine when delivered compleat as per agreement, and a like sum for every other machine finished and delivered as per agreement, until the said thirty machines and sample here before mentioned shall have been paid for. The Economy Slugging Machine Co. further agrees to leave with the Mark Flather Planer Co. the said sample machine, to be used as a standard until the expiration of this contract, and to inspect and pay for same before leaving the factory all machines within three weeks from notice of compleation, and to order small parts in lots of ten or more, said parts to be inspected the same and with same notice as machines and paid for as per price list furnished by the Mark Flather Planer Co. The Economy Slugging Machine Co. further agrees to order with first machines ($100) one hundred dollars' worth of special tools, and later on such other tools, gauges, etc., for the perfect building of said machines, such work and work on any changes that may be made different from sample machines to be paid for monthly at forty cents per hour for skilled labor, and when the finance of the Economy Slugging Machine Co. will permit they agree to pay for any tools already made for the Economy Slugging Machine that are properly constructed and finished in such a manner as to insure the interchangeing of parts made by the same."

At this time such changes had been made in the machine that parts made by the tools theretofore constructed would not fit the machines. Work was begun upon the sample machine and continued for about two weeks, when the defendant Cutter said to Flather that changes not contemplated by the contract were needed to perfect the machine, and that if Flather would make them the Machine Company would pay for parts on hand which would be

rendered useless. Flather consented to this arrangement, and a model machine was made which cost more than the price named in the contract. The Planer Company asked to be paid the actual cost, and the Machine Company refused to pay more than the contract price. They were unable to agree as to this matter or as to future prices, and no more work was done. The tools made under the first contract and of the standard fixed by the second contract were of the value of $1,713.33. The extra cost of the last model machine was $111.16, and the parts made after December 14 and before the oral agreement for changes were of the value of $93.36.

The court found that the Machine Company owed the Planer Company for all these sums, and that it had had sufficient funds since December 14, 1893, to pay the claim for tools. The amount claimed for tools in the Planer Company's specification was $1,713.33. A decree was ordered for the plaintiff company, and the defendants excepted.

*Wason & Moran* and *George B. French*, for the plaintiffs.

*Charles J. Hamblett, Charles H. Burns,* and *Oliver E. Branch,* for the defendants.

WALKER, J. The contract of December 14 was not an entire contract, in the sense that 'no right of action for money due the plaintiff corporation by the terms of the contract would accrue until it had fully performed all its agreements. To sustain the verdict, it is only necessary to enforce the plain and unambiguous terms of the contract. The Machine Company "agree to pay ($135) one hundred and thirty-five dollars for sample machine when delivered compleat as per agreement." If the Machine Company had paid nothing on account of this machine, which was "compleat as per agreement," the unequivocal intention of the parties that it should be paid for "when delivered" could not be defeated by construction. A judicial holding that no action therefor could be sustained until the Planer Company had made thirty other machines would be a palpable violation of its contractual rights, which the court is bound to protect and enforce in a proper proceeding. To say that the contract was not completed when one machine was made, or that the making of a sample machine was a mere preliminary to the substantial performance of the contract, or that the parties contemplated the making of a large number of machines and not one alone, might be an important consideration if the time for payment for the sample machine had not been expressly agreed upon in the contract. *Thompson* v.

*Phelan*, 22 N. H. 339. That agreement gave the Planer Company a right of action for the stipulated price of the machine upon its completion; and this right was expressly recognized by the Machine Company by its willingness to pay that sum at the time when the plaintiff corporation demanded payment for the actual cost of the sample machine.

The position of the Machine Company at that time was, that it was under no obligation to pay more than the price expressed in the written contract, and that the increased cost of making the machine caused by the changes made in the plan of construction, subsequent to the execution of the contract, was not a charge for which it was liable. Whether that contention, which is still made in behalf of the Machine Company, is tenable, depends upon the intention of the parties at the time when the changes were agreed upon. In other words, the question is: what was the contract as modified by the parol agreement? The Planer Company had agreed to make a certain machine for a definite price. At the request of the Machine Company, it afterward agreed to make a machine differing in material respects from the original plan. The changes thus made increased the expense of constructing the machine. Ordinarily in such a case the law would imply a promise by the Machine Company to pay for the extra expense. *Wheeden* v. *Fiske*, 50 N. H. 125. Having employed the Planer Company to build a machine according to one plan, for which it was to pay $135, no reason is apparent why it should not pay for additional expenses incurred in building the machine according to another plan which it required or requested the Planer Company to follow. It cannot be inferred that the latter company agreed in the parol modification of the written contract to. construct a materially different and more costly machine for the price originally specified; and it was competent for the court to find that the contract price was changed so as to include the extra expense, and that the Machine Company, having refused to pay this additional sum, which became due under the contract when the machine was completed, is liable therefor.

In the contract of December 14, the Machine Company also agreed to pay for certain tools that had already been made for it. There is no doubt as to the time when this obligation was to be performed, for the Machine Company expressly agreed to pay for the tools referred to "when the finance of the Economy Slugging Machine Co. will permit"; and the court has found, in substance, that the financial condition of the company had been such since the date of the contract as to permit it to pay this claim. The remaining question upon this branch of the case relates to the identity of the tools for which the Machine Company agreed to pay.

It is evident that the parties had in mind the tools made under the first contract which had not been paid for by the settlement of that contract, except as the obligation to pay for them had been renewed, embodied in, and become a part of, the new contract. To hold that the finding that the parties " settled all their differences as to past transactions" means that the plaintiffs have been paid for the tools they had made up to that time, or had waived the payment thereof, would be an unwarranted .perversion of the facts of the case and a substantial contradiction of the terms of the second contract. Manifestly, the performance by the Machine Company of its agreements contained in the last contract was intended to cover payment for the tools in question. The finding of the court that the abandonment of the old contract was a part of the consideration of the new one is fully supported by the law as applied to the facts.

Under the first contract certain tools were made, which, it was agreed, should " duplicate and interchange"; and the Machine Company agreed to pay for them if properly constructed according to the standard then established. This agreement was superseded by, or merged in, the second contract, by which the Machine Company agreed " to pay for any tools already made [ *i. e.,* under the first contract ] for the Economy Slugging Machine that are properly constructed and finished in such a manner as to insure the interchangeing of parts made by the same." At this time the plan of construction had been materially changed, so that parts made by the tools referred to in this clause of the contract would not fit the new proposed machine, and the parties were well aware of this fact. But the fact is found that there were some tools made under the first contract that corresponded with the standard established by the second contract, and that they were of the value of $1,713.33. The standard established by the second contract with reference to the old tools for which payment was to be made was that they should be of such construction as " to insure the interchangeing of parts 'made by the same "; that is, tools properly constructed under the first contract. Whether they were of use in connection with the new machine does not seem to be important. While it was competent for the Planer Company, in consideration of the second contract, to waive payment for tools properly constructed under the first contract, there is no evidence that such was the fact. The language of the last contract strongly indicates an intention that such tools should be paid for. The standard was, not that they should be capable of producing parts in the new machine, but that they should be so constructed as " to insure the interchangeing of parts made by the same." In view of the reported facts, no other construction of the contrac-

tual language of the parties is reasonable. And the finding of the court is in accordance with this construction. Although the Machine Company knew that some of the old tools would not produce parts of the new machine, it still agreed to pay for them if properly constructed under the original model. The Planer Company waived its right only to immediate payment. If it is true, as claimed by counsel, that the amount of the verdict on this branch of the case is the same as the amount claimed in the plaintiffs' specification, it does not follow that that sum does not correctly represent the fair value of the tools, for which the defendant company is liable under this construction of the contract.

For reasons similar to those already suggested, the Machine Company is also liable for the item of $93.36, which represents the cost of parts made under the second contract before the parol modification, which could not be used in the construction of the modified machine. Indeed, the Machine Company expressly agreed to make present payment on this account, and there is no valid reason why it should be released from that agreement. The result reached in regard to all the items of indebtedness is based upon the evident meaning of the contract of December 14. *Putnam* v. *Mellen*, 34 N. H. 71; *Sumner* v. *Parker*, 36 N. H. 449. It is unnecessary, therefore, to consider whether the contract was rescinded, or whether there was evidence of a rescission, in the absence of an express ruling that it was rescinded; for the verdict is sustainable as a matter of law upon the ground of the contractual rights and duties of the parties, especially in view of the fact that the cessation of the work may have resulted from a mutual understanding of the parties, without fault on the part of the Planer Company. So far as the facts reported bear upon the question, the finding is consistent with the assumption that the Planer Company was justified in ceasing to work under the contract.

The further claim is made that if the Machine Company is indebted to the Planer Company as found by the court, the stockholders of the former company are not liable therefor under the statute, because Mark Flather, one of the original plaintiffs in the proceeding, was and is one of the stockholders who omitted to pay for their stock, so that no return could be made, as required by the statute. Without attempting to decide what effect those facts might have upon the right of Mark alone to maintain this proceeding, it is a sufficient answer to the position suggested, that the Planer Company appears to be the real plaintiff, and that Mark personally has no interest in the suit, except practically as a party defendant by virtue of his subscription for stock in the Machine Company. As, therefore, the defendant company is indebted to

the plaintiff company, and as "the whole amount of the capital stock fixed and limited" by the former company had not been paid in (P. S., *c.* 150, *s.* 8), the defendant stockholders are liable in this proceeding.

*Exception overruled.*

All concurred.